UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | |
|---|---|
| JEFF L. SCHOLTEN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:18-cv-919<br>) |
| COMMISSIONER OF<br>SOCIAL SECURITY, | ) Honorable Phillip J. Green<br>)<br>) |
| Defendant. | )<br>) |

# **MEMORANDUM OPINION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed his applications for DIB and SSI benefits on March 20, 2015. He alleged a September 29, 2014, onset of disability. (ECF No. 7-5, PageID.252, 260). Plaintiff's claims were denied on initial review. (ECF No. 7-4, PageID.155-71). On May 9, 2017, he received a hearing before an ALJ. (ECF No. 7-2, PageID.57-105). The ALJ issued his decision on July 6, 2017, finding that plaintiff was not disabled. (Op., ECF No. 7-2, PageID.38-50). On June 12, 2018, the Appeals Council denied review (ECF No. 7-2, PageID.29-30), rendering the ALJ's decision the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review. Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "failed to provide

logical, let alone 'good' rationales for dismissing the opinions of [p]laintiff's treating physician and the consultative examiner," which plaintiff contends contradicted the ALJ's findings regarding the residual functional capacity. (Plf. Brief, 1, ECF No. 10, PageID.1046). For the reasons stated herein, the Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-

73; *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").

## **The ALJ's Decision**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act through December 31, 2015. (Op., 3, ECF No. 7-2, PageID.40). Plaintiff had not engaged in substantial gainful activity since September 29, 2014, the alleged onset of disability. Plaintiff had the following severe impairments: "degenerative disc disease, osteoarthritis of the left ankle and right wrist, hip bursitis, left rotator cuff tear, atrial fibrillation, bradycardia, status-post dual chamber pacemaker, obstructive sleep apnea, and obesity." (*Id.* at 4, PageID.41). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listing impairment. (*Id.* at 5, PageID.42). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of light work with the following exceptions:

> he requires the freedom to sit for ten minutes after standing/walking for one hour while remaining on-task and at the workstation. He can frequently push/pull with his right dominant upper extremity and his bilateral lower extremities. He can occasionally push/pull with his left non-dominant upper extremity. He can occasionally climb ramps or stairs and he can never climb ladders, ropes, or scaffolds. The claimant can frequently balance on level surfaces. He can occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead and in all directions with his left non-dominant upper extremity and frequently reach overhead and in all directions with his right dominant upper extremity. He can occasionally tolerate exposure to extreme cold and vibration. He can never tolerate exposure to workplace hazards such as unprotected heights and moving mechanical parts. The claimant can

> never operate a commercial motor vehicle. Due to chronic pain and side effects of medication, he can perform simple, routine tasks.

(*Id.* at 6, PageID.43).

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 7, PageID.44). Plaintiff could not perform any past relevant work. (*Id.* at 11, PageID.48).

In response to a hypothetical question regarding a person of plaintiff's age with his RFC, education, and work experience, the vocational expert (VE) testified that there were approximately 476,000 jobs[1] that exist in the national economy that he would be capable of performing. (ECF No. 7-2, PageID.91-94). The ALJ found that this constituted a significant number of jobs, and that plaintiff was not disabled. (Op., 12-13, PageID.49-50).

## Discussion

Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of Bryan Kovas, M.D., under the treating physician rule, and that the ALJ's RFC finding was contrary to the opinions of Joseph Bechard, M.D., a consultative examiner. (Plf. Brief, 14-20, ECF No. 10, PageID.1059-65; Reply Brief, 1-5, ECF No. 17, PageID.1090-94).

---

[1] The VE actually identified a total of 496,000 jobs, 145,000 of which were line attendant positions. (ECF No. 7-2, PageID.92-94). The ALJ's opinion cited "125,000 line attendant positions." (Op., 12, PageID.49). The lower total job figure of 476,000 gives plaintiff the benefit of the discrepancy.

A. Dr. Kovas

Generally, the medical opinions of treating physicians are given substantial, if not controlling weight. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent ... with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

"[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773 (citation and quotation omitted). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990*); see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability,

consistency, specialization, and other factors.  *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p[2] (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Perry v. Commissioner*, 734 F. App'x 335, 339 (6th Cir. 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]' ") (quoting *Biestek v. Commissioner*, 880 F.3d 778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart*, 710 F.3d at 376.  The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart*, 710 F.3d at 376.  This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart v. Commissioner*, 710 F.3d at 376

---

[2] On March 27, 2017, the Administration rescinded SSR 96-2p "for claims filed on or after" that date.  Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (reprinted at 2017 WL 1105348). The Administration noted that Ruling 96-2p was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions."  *Id.*; *see Hancock v. Commissioner*, No. 1:16-cv-1105, 2017 WL 2838237, at *7 n.2 (W.D. Mich. July 3, 2017) ("Those new rules, however, apply only to claims filed on or after March 27, 2017.").

("This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'") (citation and quotation omitted).

Dr. Kovas began treating plaintiff on October 16, 2015, more than a year after plaintiff's alleged onset of disability.[3] Plaintiff's chief complaints were pain and medication management. Plaintiff described his symptoms as "variable" and "incapacitating." (ECF No. 7-9, PageID.707). Dr. Kovas described plaintiff as well-developed, well-nourished, and in no distress. (*Id.* at PageID.708). Plaintiff's mood, affect, and behavior were normal. Plaintiff reported neck pain, but he had a normal range of motion. (*Id.* at PageID.708-09). Dr. Kovas indicated that he would obtain plaintiff's treatment records and order additional tests if plaintiff's neck pain persisted. Plaintiff's hypertension was well controlled. He was taking a high intensity statin medication for his hyperlipidemia. Plaintiff was morbidly obese. His body mass index (BMI) was 45, despite his statement that he had lost 75 pounds since July. Dr. Kovas stated that he would monitor plaintiff's weight. Plaintiff was tobacco dependent, with cessation of less than one month. His gastroesophageal reflux disease (GERD) was well controlled with Prilosec. (*Id.* at PageID.709).

On December 16, 2015, plaintiff returned to Dr. Kovas with chief complaints of weight loss, a right breast mass, foot pain, pacemaker follow-up, and a flu shot.

---

[3] The ALJ gave partial weight to the opinion of a state agency medical consultant who had reviewed plaintiff's medical records through July 20, 2015, and who offered an opinion that plaintiff was capable of a limited range of light work. The ALJ found that some additional RFC restrictions were necessary given more recent evidence regarding plaintiff's bilateral hips and left shoulder. (Op., 10, PageID.47).

(*Id.* at PageID.720). Plaintiff reported that he had lost another 25 pounds. Dr. Kovas ordered an ultrasound of plaintiff's right breast mass. He noted that plaintiff had a follow-up appointment scheduled with his cardiologist and that plaintiff's sleep issues were handled by Dr. Waters, a sleep specialist. Plaintiff reported left shoulder pain and Dr. Kovas referred him to an orthopedic surgeon for an evaluation. (*Id.* at PageID.722).

On March 4, 2016, plaintiff returned to Dr. Kovas with a chief complaint of dizziness. (*Id.* at PageID.736). Dr. Kovas suspected that plaintiff's symptoms were caused by his medication. He told plaintiff to start taking half as much Neurontin. Plaintiff had lost weight and did not need the high doses that he had been taking. (*Id.* at PageID.738). Plaintiff returned on March 17, 2016, for a follow-up examination regarding chronic conditions. Plaintiff had a normal range of motion and no edema. (*Id.* at PageID.754). Dr. Kovas repeated that plaintiff needed to decrease his Neurontin intake. (*Id.* at PageID.748).

On May 13, 2016, Dr. Kovas saw plaintiff regarding complaints of dizziness and lower back and bilateral hip pain. (*Id,* at PageID.758). Dr. Kovas "agreed to check X-rays of the bilateral hips to evaluate [them] for structural issues." (*Id.* at PageID.760). Dr. Kovas observed that plaintiff "follows with pain management in Muskegon for his other chronic pain issues." (*Id.*). Plaintiff's hip x-rays showed no fracture or dislocation. (*Id.* at PageID.761). On June 27, 2016, plaintiff reported moderate pain in the lumbar spine into his hips. (*Id.* at PageID.777). Plaintiff requested a referral for possible back injections. Dr. Kovas referred plaintiff to Dr.

Greenslait for an evaluation. (*Id.* at PageID.779, 788). On July 18, 2016, plaintiff returned for a follow-up examination. His musculoskeletal results showed a normal range of motion and no edema. (*Id.* at PageID.803). Plaintiff was advised to return in about six months for his annual physical examination. (*Id.* at PageID.797).

On December 16, 2016, Dr. Kovas completed a Physical Residual Functional Capacity Questionnaire. (ECF No. 7-10, PageID.874-78). He related that he began treating plaintiff in October 2015, and that he saw plaintiff once every one or two months. Dr, Kovas listed the following diagnoses: "[d]egenerative disc disease, L1-L2 disc herniation, [and a history of] L4, L5, S1 fusion." (*Id.* at PageID.874). Plaintiff's symptoms were pain and dizziness. (*Id.*). Dr. Kovas stated that emotional factors did not contribute to plaintiff's symptoms. Dr. Kovas left blank questionnaire sections where he was asked to identify plaintiff's limitations stemming from psychological impairments. (*Id.* at PageID.875, 878). He offered an opinion that during a typical workday plaintiff would frequently experience symptoms severe enough to interfere with attention and concentration necessary to perform even simple work tasks. (*Id.*). Dr. Kovas indicated that plaintiff could sit for two hours before needing to stand and stand for five minutes before needing to sit down. During an eight-hour workday, plaintiff could stand for less than two hours and stand or walk for less than two hours. (*Id.* at PageID.875-76). He stated that plaintiff needed a job that would allow him to change positions at will from sitting, standing, or walking. Plaintiff did not need a cane or other assistive device. Dr. Kovas offered his opinion that plaintiff could occasionally lift less than ten pounds, rarely lift ten

pounds, and never lift twenty pounds. Plaintiff could rarely twist or climb stairs and never stoop, crouch or climb ladders. (*Id.*). Plaintiff had no significant limitations reaching, handling or fingering. Plaintiff would likely have good days and bad days and be absent from work more than four days per month as a result of his symptoms and treatment. (*Id.* at PageID.877).

The ALJ found that Dr. Kovas's opinion was entitled to little weight. (Op., 10-11, PageID.47-48). He found that the objective medical evidence did not support Dr. Kovas's opinion. The CT, MRI, and x-ray imaging did not support "significant changes [plaintiff's] left ankle, bilateral hips, or spine since 2009 and 2010."[4] (*Id.*) (citing ECF No. 7-7, PageID.425, 464-65, 543, 544; ECF No. 7-9, PageID.761, ECF No. 7-10, PageID.826; ECF No. 7-11, PageID.972). Plaintiff had similar objective test results during periods he was able to perform substantial gainful activity as a truck driver and there was little evidence of plaintiff's condition worsening during the period at issue. (Op., 9, 11, PageID.46, 48). Further, the ALJ found that the RFC restrictions that Dr. Kovas suggested were "inconsistent with normal examination findings such as full strength throughout, normal gait, and intact sensory functioning." (Op., 11, PageID.48) (citing ECF No. 7-7, PageID.488, 531, 546; ECF No. 7-8, PageID.635, 655; ECF No. 7-10, PageID.903; ECF No. 7-11, PageID.1029).

Plaintiff argues that the ALJ did not provide good reasons for the weight that he gave Dr. Kovas's opinions because his overall condition had deteriorated. (Plf.

---

[4] The ALJ's opinion includes a discussion of plaintiff's back, right wrist, and left ankle surgeries performed before 2010. (Op., 7, 9, PageID.44, 46).

Brief, 16, ECF No. 10, PageID.1061). The Court finds that the ALJ gave good reasons. The objective medical evidence did not support the level of functional restriction that Dr. Kovas suggested. Further, Dr. Kovas's questionnaire responses did not provide explanations regarding the medical basis for any of the proffered RFC restrictions.[5]

Plaintiff argues that the ALJ's reference to his work as a truck driver was not a good reason because he never worked as a truck driver during the period at issue. (*Id.* at 16-17, PageID.1061-62). This argument lacks merit. If plaintiff had been working at the substantial gainful activity level, he would have been found not disabled at step one of the sequential analysis. *See White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009). The ALJ's point was that plaintiff had been able to work at the substantial gainful activity level with similar objective test results.

Plaintiff argues that the Commissioner's decision should be overturned "because the ALJ focused on a few normal examinations without confronting almost any of the evidence which corroborated Dr. Kovas's opinion[.]" (Plf. Brief, 17, PageID.1062). Arguments that the ALJ mischaracterized or "cherry picked" the administrative record are frequently made and seldom successful, because "the same

---

[5] The RFC questionnaire was a check-the-box form. ALJs are not bound by conclusory statements of doctors where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton*, 246 F.3d at 773; *see also Ellars v. Commissioner*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (ALJs "properly [give] a check-box form little weight where the physician provide[s] no explanation for the restrictions entered on the form and cite[s] no supporting medical evidence."); *see also Nicholas v. Berryhill*, No. 16-14072, 2018 WL 2181463, at *3 (E.D. Mich. Jan. 25, 2018) ("Courts in this circuit have held that a medical source statement in 'check-the-box' format, by itself, provides little to no persuasive value — to hold otherwise would neglect its glaring lack of narrative analysis.") (citation and quotation omitted).

process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d at 284. The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence. *See Ulman v. Commissioner*, 693 F.3d at 713; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772. The ALJ's decision provides an accurate summary of the administrative record.

Plaintiff's argument that the ALJ did not adequately articulate his application of the factors listed in 20 C.F.R. §§ 1527(c), 416.927(c) (Plf. Brief, 18, PageID.1063), does not provide a basis for disturbing the Commissioner's decision. The ALJ is not required to provide an exhaustive step-by-step analysis. *See Perry v. Commissioner*, 734 F. App'x 339; *Biestek v. Commissioner*, 880 F.3d at 785. The ALJ's opinion reflects that the ALJ considered the relevant factors. Plaintiff moved to Michigan from Montana in July 2014, and he began treating with "several orthopedic specialists," none finding the level of functional restriction suggested by Dr. Kovas. (Op., 7-8, PageID.44-45). The ALJ recognized that Dr. Kovas was a primary care physician rather than an orthopedic or pain management specialist. (*Id.* at 8-9, PageID.45-46). The ALJ observed that, although Dr. Kovas's progress notes stated

that plaintiff was being treated by a pain management specialist,[6] the records from that specialist had not been filed in support of plaintiff's claims for DIB and SSI benefits. (*Id.* at 9, PageID.46) (citing ECF No. 7-9, PageID.760). The ALJ's opinion reflects his consideration of the nature and extent of Dr. Kovas's treating relationship. The ALJ specifically discussed Dr. Kovas's October 2015 and May 2016 progress notes, as well as his December 2016 Physical Residual Functional Capacity Questionnaire responses. (*Id.* at 9-11, PageID.46-48). The ALJ considered the supportability and consistency of Dr. Kovas's opinions. The significant RFC restrictions that Dr. Kovas suggested in his questionnaire responses were not well supported by the objective evidence and they were inconsistent with the record as a whole. (*Id.* at 10-11, PageID.47-48). The Court finds no violation of the treating physician rule.

B. <u>Dr. Bechard</u>

Plaintiff argues that the ALJ's RFC finding failed to give appropriate weight to the opinions of Dr. Bechard[7] and that he failed to discuss the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) in evaluating Dr. Bechard's opinion. (Plf. Brief, 18-20, ECF No. 10, PageID.1063-65; Reply Brief, 5, ECF No. 17, PageID.1094).

---

[6] Dr. Kovas's progress notes stated that plaintiff followed with "pain management in Muskegon[.]" (ECF No. 7-9, PageID.760).
[7] The parties refer to "Dr. Bechard," and for the sake of clarity, the same title is used herein. It is appropriate to note, however, that Dr. Bechard's report does not indicate that he holds a doctorate degree. He has a master's degree in social work and an education specialist's degree. (ECF No. 7-7, PageID.541). He is a limited license psychologist. (*Id.*).

RFC is an administrative finding of fact reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see also Shepard v. Commissioner*, 705 F. App'x 435, 442 (6th Cir. 2017) ("RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner."); *Cutler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (An opinion offered on an issue reserved to the Commissioner "is not entitled to any particular weight.") (citation and quotation omitted).

The opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ was not " 'under any special obligation to defer to [a consultative examiner's] opinion[s] or to explain why he elected not to defer to [them].' " *Roach v. Commissioner*, No. 1:15-cv-794, 2016 WL 4150650, at *5 (W.D. Mich. Aug. 5, 2016) (quoting *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011)).

Plaintiff's burden on appeal is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in his favor. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ. *See Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003). The ALJ is responsible for weighing psychological opinions. *See Buxton*, 246 F.3d at 775; *accord White v. Commissioner*, 572 F.3d at 284.

The ALJ observed that plaintiff "did not report experiencing any symptoms of depression or anxiety to a treating provider or seek any form of mental health treatment." (Op., 4, PageID.41). Further, in May 2015, plaintiff "denied having difficulty in areas such as memory, competing tasks, concentration, understanding, following instructions, and getting along with others." (*Id.*). Plaintiff "denied socializing often[,] but asserted that he had no difficulty interacting with family, friends, neighbors, or authority figures. [Plaintiff] stated that he could pay attention as long as needed." (*Id.*) (citing ECF No. 7-6, PageID.323-24; ECF No. 7-7, PageID.538).

On July 6, 2015, Dr. Bechard performed a mental status evaluation. (ECF No. 7-7, PageID.537-41). Plaintiff had "no history of inpatient or outpatient treatment [for] psychological or behavioral problems." (*Id.* at PageID.537). Plaintiff related that he graduated from high school. He stated that he was able to get along with friends and family. (*Id.* at PageID.358). His stream of mental activity was spontaneous, logical and organized. "His [] thoughts were concrete[,] logical and reality based." (*Id.* at PageID.539). Plaintiff denied having any hallucinations, delusions, feelings of persecution or obsessive thoughts. (*Id.*). He was oriented to time, person, and place. (*Id.* at PageID.540). Plaintiff rated his pain as a seven on a scale of ten. Dr. Bechard characterized plaintiff's mood as somewhat guarded, irritable, anxious, and depressed. (*Id.* at PageID.539). Dr. Bechard offered a diagnosis of a somatic symptom disorder with predominant pain, persistent, severe; adjustment disorder with mixed anxiety and depressed mood; and an unspecified sleep-wake disorder. (*Id.* at

PageID.541). His prognosis was as follows:

> Based on today's examination it appears that the client is capable of understanding and retain[ing] instructions/directions meant to lead to the completion of a task; however his anxiety, depressed mood, and irritability may combine with his multiple physical impairments and subsequent chronic pain to compromise his ability to follow through in a consistent and timely manner, as well as to interfere with his interpersonal interactions. He has multiple physical ailments and subsequent chronic pain appeared to be restrictions to his ability to perform simple, repetitive tasks requiring a physical response. Increasing the probability that his performance in a competitive environment can be viewed as successful will depend, in part, on a psychiatric/pain medication review, alleviation/resolution/management of his multiple physical ailments and subsequent chronic pain; and psychotherapy.

(*Id.* at PageID.541).

The ALJ gave little weight to Dr. Bechard opinions. (Op., 11, PageID.48). Dr. Bechard was "not familiar with the claimant's medical history or physical limitations aside from the claimant's own subjective allegations." (*Id.*). Further, plaintiff did not allege having anxiety or depression. (*Id.*).

On July 21, 2015, Dr. Larry Irey, Ph.D., a state agency psychological consultant, reviewed plaintiff's records, including the assessment provided by Dr. Bechard (ECF No. 7-3, PageID.117, 120-21, 134, 138), and found that plaintiff did not have any severe mental impairment. (*Id.* at PageID.124, 141-42). The ALJ found that Dr. Irey's opinion was entitled to significant weight because "the record as a whole [did] not support a finding that the [plaintiff's] mental impairments more than minimally limited his ability to engage in basic work activity." (*Id.*). (Op., 11, PageID.48).

On May 9, 2017, plaintiff testified that he had difficulty concentrating and was drowsy as a result of his sleep apnea, pain, and medication side-effects.[8] (ECF No. 7-2, PageID.77-78). Plaintiff did not claim any other mental impairment and he did not testify that he had a history of treatment for such an impairment.

The Court finds no error in the weight the ALJ elected to give Dr. Bechard's opinions.

There is no rule requiring that the ALJ articulate his application of the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) in evaluating the opinion of a consultative examiner. *See Neal v. Commissioner*, No. 17-13403, 2018 WL 7575188, at *4 (E.D. Mich. Dec. 10, 2018); *Furman v. Commissioner*, No. 17-12857, 2018 WL 4214157, at *4 (E.D. Mich. Aug. 15, 2018). Here, the ALJ recognized that Dr. Bechard was a "consultative psychological examiner" who saw plaintiff on one occasion. (Op., 11, PageID.48). The ALJ rejected the RFC restrictions that Dr. Bechard suggested because they were not well supported and they were not consistent with the record as a whole. The ALJ's finding is supported by substantial evidence. The Court finds no basis for disturbing the Commissioner's decision.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision is affirmed.

Dated: April 3, 2019  /s/ Phillip J. Green
　　　　　　　　　　　　　　　　　PHILLIP J. GREEN
　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[8] The ALJ credited plaintiff's testimony regarding his subjective symptoms to the extent that the ALJ's RFC finding limited plaintiff to performing simple, routine tasks and never operating a commercial vehicle. (Op., 6, 10, PageID.43, 47).

-17-